May it please the Court, my name is John Devine. I'm the Deputy Attorney General with the California Attorney General's Office, and I represent the appellant in this case, C.H.B. Officer Stephen Margroff. I would like to reserve three minutes for rebuttal. You may do so, Counsel. Just watch the clock. Thank you. The initial panel determined that nothing in the universe of cases prior to Officer Margroff's conduct would have put him on notice that using force, deadly force in the circumstances, he did shock the conscience. Counsel, for the appellees and appellees in their brief, seek to erode, if not eliminate, the qualified immunity test that was established in Saussure. Saussure required two distinct prongs, first to determine whether it was a constitutional violation, and then to determine whether or not that law was clearly established. Counsel, help me out on this. As I recall, there was a summary judgment motion which raised the qualified immunity issue. It was resolved against you, but there was never an appeal taken from that. Is that correct? Correct, Your Honor. There was no general appeal taken from that. All right. So then it went to the jury. And now we have a jury verdict on subjective intent. So how do we deal with that, given the Saussure analysis? Your Honor, I'd also like to mention that we did make a Rule 50 motion, both at the close of Plaintiff's case and then again at the close of our case, before the case ever went to the jury verdict. Well, we're really not, the question really doesn't challenge that. But we do have a jury verdict. And so I think the question is pretty applicable, because we do have a jury verdict. Now the jury has had a chance to evaluate the evidence, and they came out suggesting that your client should pay. And what the jury found was on the constitutional standard, the purpose to harm unrelated to legitimate law enforcement purpose, what the clearly established test does, it actually has something a little bit different. And, in fact, the Supreme Court has cautioned or instructed courts not to define clearly established law at a high level of generality. And that's what the jury was just finding the constitutional standard. It wasn't looking to whether or not there was any type of mistake as to the law or whether there was any type of mistake. Well, maybe we ought to look at the law. Didn't the County of Sacramento v. Lewis in 1998 suggest that it was a violation of substantive due process for officers not to act with a purpose to cause harm unrelated to a legitimate objective of arrest? Isn't that the United States Supreme Court? Yes, Your Honor. And didn't Moreland v. Las Vegas Metro Police Department, our court in 1998, say police officers do not violate when they act with a purpose of harm if that purpose was related to the legitimate use of force necessary to protect the public and the officers? So we're back where we are. The officer at the time full well knew he could only use force for a legitimate purpose. And if the officer can only use force for a legitimate purpose, then the jury determines it isn't a legitimate purpose. Isn't the case over? No, Your Honor, because the jury was never asked to make any allowances for any mistake or any allowances. Well, but just a minute. The jury instructions said the standard for determining whether a defendant violated due process, whether he acted in a manner which shocks the conscience, defendant violated the plaintiff's rights, shocked the conscience if he acted with a purpose to cause the death unrelated to the legitimate law enforcement purpose. And then they told the jury that law enforcement purpose is taking Eakland into custody, self-defense, or the defense of others. So if the jury followed the jury instructions, they said there was no legitimate law enforcement purpose. I agree with that, Your Honor. Well, if there's no legitimate law enforcement purpose, then there's a violation of due process versus in looking at Moreland. Yes, I believe that there was a constitutional violation. It goes to the larger question of whether that constitutional violation then precludes any question on the second prong of qualified immunity as to whether or not that was clearly established. Well, that's why I said, how could it not be clearly established when you had County of Sacramento versus Lewis and Moreland versus the Las Vegas Metro Police Department? They were both on the books at the time. Because that's the constitutional standard, and I believe that's what, as recently as Ashkar versus Al-Kid, the Supreme Court has warned courts not to do when evaluating whether or not the law is clearly established. I understand what the court did in that case, but I guess what I'm trying to figure out is we're not even in the same boat as that case. That case didn't even have a jury verdict. We're in a case where we had a jury, and frankly, I was on the first panel, and when there was a motion to reconsider, I had to rethink about this. And I had some great, I mean, Judge Alarcon and Associates, I mean, I look at those, Judge Reimer, they were wonderful, and I was on the same panel, and we came out the way we did. Then we had the motion for reconsideration, and I looked again. We got a jury verdict here. This is not a summary judgment. This is a jury verdict, which is determined that the officer did not do what he did on a legitimate law enforcement purpose. And if I look at Moreland and County of Sacramento, that means it was a violation of the law, and it was clear. So how do I undo the jury verdict then? The constitutional standard at play here wasn't actually clarified by the Ninth Circuit until the Porter v. Osborne case. The Moreland case and Lewis were out there, but those applied in a different context. Those applied during chases where an individual or a third party was injured and hadn't directly addressed the instance where you had here, where you had an officer who was using excessive force. Well, but you're really not trying to argue with, to me, are you, summary judgment cases controlling over this fact situation? I mean, that's the worry that I have. It seems to me like your brief throws a lot of summary judgment cases at me. But what I'm really trying to find is what do I do in a jury verdict case? And this is not a summary judgment. This is not where we are giving every benefit of the doubt to the plaintiff, but we're determining for the fact, for the law, because the facts are not in controversy what's going on. Here we have a jury who's made a decision that this is not a legitimate law enforcement purpose. If I could respond with two points to that first. The question only got to the jury because the district court didn't properly rule on our Rule 50 motion. Had that occurred, this case would have never gone to the jury. And it was because of the failures at the motion for summary judgment stage and the failures at the Rule 50 stage. But you never took that case up on an interlocutory basis. What you have is the right not to be sued, and you lost on that round, but you never sought an appeal. So I think aren't you stuck with it at this stage? We can't ‑‑ the Supreme Court precedent that suggests that we can't go back and look at the original summary judgment motion. Correct. With the constitutional finding, that is correct, the constitutional finding. But you have the Pearson case, which the Court has said you can either take a look at the constitutional issue first or you can take a look at the qualified immunity question first. You also have in this circuit the Norwood case, Norwood v. Vance, and that was a jury determination. And there was, at the end of it, there were questions raised not only about the jury instructions, but also questions raised about qualified immunity. And the constitutional issue, excuse me, the qualified immunity issue was decided in the defendant's favor after a jury verdict. Well, let me ask you this. Once we get to the qualified immunity, you will agree with me that qualified immunity is just immunity from suit, right? It's not a defense to liability. It's an immunity to suit, isn't it? I mean, if you look at Pearson, the very case you're looking at, it cites at page 231, qualified immunity is effectively lost if you go to trials, what Pearson says. So we're not really talking about a defense to liability here. We're talking about immunity from suit. So we've had a case. It's gone to the jury. It seems to me after going to trial, you have one of two options. You either attack the jury instructions, which you have. I'm having a tough time understanding how you're going to win the attack, but you did. Or you say there's not a sufficiency of evidence. You didn't even attack that. Well, we did raise the fact that there was not a constitutional violation. Oh, I understand that. But the sufficiency of the evidence in sustaining the jury's verdict was not attacked. So all we're left with then are the jury instructions after the jury has found something. Now, you may fight it all the way, but it seems to me that my good colleague here has pointed out a pretty important point. If you're going to fight going to trial, we better get it on appeal. Because if we don't get it on appeal, then at that point, the jury gets a chance to make some determinations, which we then have to take into consideration. I'd like your response to that, because, frankly, that's why you're here again. Right. It's because that's the nub question to me. The courts have said in the past that there are a number of reasons for not taking an interlocutory appeal. And I won't go into those, what the various ones are, but I do know that in a case like this, if you do away with the qualifying immunity test, you're really going to have inconsistent results. This case started off as both a Fourth and Fourteenth Amendment. And if the court can preserve the qualified immunity analysis for the reasonable officer on the Fourth Amendment and can't do it on the Fourteenth Amendment, you're going to have an inconsistent result. Because this Court in Wilkinson v. Torres has held, in fact, similar to this, that there was qualified immunity. Well, but as I understand it, they asserted three constitutional claims and one state claim. Then even before the trial, everything was withdrawn except the Fourteenth Amendment claim. Correct. And the Fourteenth Amendment claim then had a motion for summary judgment, which was denied. And you didn't appeal or your client didn't appeal that denial. And the court went forward. Yes, you made a motion after the plaintiff presented their evidence, but again denied. Then you made another motion after the trial was over, again denied. But what I've got to do now is I have to give some credit to the jury verdict. Otherwise, it's just a summary judgment motion again. And I'm trying to, if I can, glean from you, how do I get around the fact there was a jury verdict? Well, I think we're entirely omitting the Rule 50 motion that was in there. Yeah, but the Rule 50 motion was made after the plaintiff had presented their evidence, correct? And at that point, the court said there's enough evidence for this to go on on a Fourteenth Amendment basis. Correct. And he said that. He said that because there's a lot of evidence here. I mean, the car was contained in a dead-end street. Eklund refused to get out of the car, used epithets on the officer. The officers weren't positioned so she could hurt them. And he shot her 12 times and emptied his gun. I mean, that's, in those kind of circumstances, shooting her 12 times is the thing. If I'd have been the district court, I'd have denied the motion too. That seems to be why 12 times. The court just looked in the Rule 50 motion solely at the constitutional standard. It never even looked at the second part. All right, counsel. Go ahead. And so, therefore, we're precluded from raising the qualified immunity because the rule properly ruled it at the Rule 50 stage? I think we understand your argument, counsel. You want to move? Can I suggest that you give us your best argument on the attorney fee issue? The attorney fees were allowed at $600 an hour, and I guess there's a showing that most litigation in this area is in the $150 to $200 an hour. What is your argument on that? On the attorney's fees issue, we think that the fees were certainly too high. Yeah, but what's the test? What is the test that we have to apply? The Lodestar test. Okay. And then whether or not they were proportioned to the causes of action. Well, yeah, isn't there a case, though, there are in fact a series of cases now that establish that the rate to be used as you apply the test is the rate in the community, in the legal community, which apparently has been established at at least $600 an hour at that time. Yes, Your Honor. Why shouldn't that be the rate? I think that is the rate. I think what the district court was, they awarded every hour, every minute for the case. So what's your argument then on the attorney's fees? You concede the rate is proper, but what? That the court should not have awarded for the number of hours, and that there also was a conflict with one of the guardians was actually the attorney, and that those fees should have been omitted from the award. Well, that's a very small amount, isn't it? I can't recall what that amount is right now. I believe it was in the ---- Well, as I understand it, the total attorney's fees awarded was in the $500,000 range, something like that, plus some additional. $489,000 for the merits and $63,490,000 for the fees petition. Yes, and they had two attorneys. And one of the attorneys, one of the points we raised during the attorney's fees motion is that one of the attorneys was actually in a position where he was both representing the minor and also trying the case. We thought that that was an appropriate conflict. Okay. If we don't agree with that, is there anything else you can come up with? No, Your Honor. All right. I mean, my worry is that we're on a market rate. Two experts said this market rate. I don't find any law that says the court must adjust it down unless we go with you on this other argument you're making. We're kind of stuck, aren't we? Yes, Your Honor. On an abuse of discretion standard. That is the standard that governs. Counsel, you're down to just under three minutes. You may want to reserve. I do, Your Honor. Thank you. You may do so. We'll hear from the appellee. Thank you. Mr. Schwartz. I'm Amitai Schwartz. I'm representing the plaintiffs and appellees. I'd like to take five seconds to thank the court for accommodating my travel schedule. I'm happy to do so, counsel. I appreciate it very much. This is one of those rare cases that the court, I think, recognizes that actually a police shooting case survives some rejection. As in the Supreme Court directed in the Ortiz case that went to trial, the jury made its decision on, even though it was called a special verdict, there was a general verdict, made its finding, and the only question is whether the evidence was sufficient to uphold that verdict. The questions that were decided or implied by that general verdict were pure questions of fact. The question of intent is a question of fact that the district courts, the courts of appeal, deal with every day, criminal cases, civil cases, and so forth. The crux of this entire case that the jury considered was whether Officer Mark Graf had a purpose to harm without a legitimate law enforcement objective, and it's that purpose question that's the intent question. The defendant would ask this court to act as a super jury or another layer of jury to second-guess that intent question, and as legions of cases from this Supreme Court have shown, that's not a factual issue that can be second-guessed unless there's no evidence to support it. And here, as I think Judge Smith had articulated it in his questions to the defendant, there was plenty of evidence to support for a reasonable jury-defined intent. Let me ask you a question about that. What's your best case for this being something that is a subjective decision, a jury decision, rather than an objective decision? Because it seems to me that the former opinion, which I joined, said it's an objective decision. Well, the pure factual question was subjective for the seven jurors to decide unanimously, is he intent or is he not intent? So they were trying to discern and come to a unanimous decision as to what the officer's intent was. This Court's purpose, and certainly the district court's purpose in reviewing the 50B motion, was to determine whether there was sufficient evidence that a reasonable jury could make that finding. Okay, but we're here on a qualified immunity claim. I understand. And so what would help us, if you would take us through the analytical process, use Pearson, use Saussure, whatever it is, but given that there was no appeal and it did go to the jury but the issue was preserved, what is the analysis that we have to follow? The analysis is the analysis that this Court followed in the Torres v. City of Los Angeles case and the Settle Good case that was cited on page 14 of our supplemental brief. Which case, the second one? The second one was Settle Good, S-E-T-T-L-E-G Good, Judge Kuczynski's opinion. It's a First Amendment retaliation case. The analysis is to determine, first of all, what the facts are. And that was the job of the jury. No, no. Yeah, but we're here on qualified immunity. So before you get to the jury, what's the threshold? And then how do you factor the jury finding into that analysis? I think that's what we're looking at here. The threshold, I believe, is quite simple. The threshold is the usual threshold is would a reasonable public official, in this case a police officer, know that he was clearly violating or he was violating clearly established prong. All right, this is the clearly established prong. All right. And so the question should be asked how? The question should be asked, given the facts as found by the jury and as inferred from that judgment. Okay, I'm not quite at the jury yet. Don't we have to go through the allegation first and then see what the jury did or not? Well, in a typical qualified immunity case, you look at the assertions made in the motion for the complaint and the motion for summary judgment. It's before you get to the jury. My position, Your Honor, is that we're past the allegation stage. We passed the allegation threshold when the jury came back with its verdict. And we have to accept the verdict as it is. We have to make inferences in favor of the party. So the allegations, in some respects, don't count, at least for this discussion. Why do you say that? I mean, what I'm really getting at is what the officer perceived or should have perceived, is that something the courts can decide or is that something the jury decides? The jury has to decide. Why? What case says that? Well, all these cases that say that you defer to the jury's judgment and you don't ‑‑ there are no cases that say that the judge becomes a super jury where it looks at the situation from the perspective of the officer when there's contradictory evidence, which was considered by a jury. And that's what happened here. There was contradictory evidence. Officer Markgraf told one story. Other officers told another story. The jury had to put it together. They did. As I understand it, if we're looking at a 14th Amendment claim, there's really two ways to shock the conscience. One would be if there was actual deliberation by the officer, which, as I understand it, was passed here. Nobody's claiming that. But the second would be where his conduct would shock the conscience, and that happens when he acts with a purpose of harm that is unrelated to a legitimate law enforcement objective. Isn't that what was tried to the jury? That's what was tried to the jury. And so the jury, based on the jury instructions, suggested that he did not act with the purpose to harm that was related to a legitimate law enforcement objective. Is that what you're arguing? I'm arguing the opposite, that the court found that he did not have a legitimate law enforcement purpose. And that's what the jury found, and therefore meeting what they were supposed to find with the facts that were presented to them. And that constitutes the clearly established prong? Is that? For my purposes, you need to connect it up. Okay. You stole my question right off the bat. So connect it up. How do we know that's clearly established law? Look at what the law was. And the law was exactly what Judge Smith said in his opening question to the defendants' counsel. The law was established by Lewis v. City of ‑‑ County of Sacramento and in Moreland, where it said where there's not enough chance to deliberate, to clear things up, where the officers have to act fast, where you're in a situation, whether it's a high‑speed car chase or whether it's a familial deprivation case, where the standard is a substantive due process, shock the conscience standard. The standard becomes, the measure becomes whether an officer acts for a purpose to harm without a legitimate law enforcement purpose. And it was established in 1998 and 1999. As a matter of fact, I think it was established before that because everybody, a police officer wearing a uniform, should know whether Lewis made it out or not and you can't shoot somebody without a legitimate law enforcement purpose. And the prior panel agreed with that, correct? I believe so. So how did the prior panel get it wrong? Because the prior panel, well, the prior panel I mean, you've got two of us on here, so you're going to take us right on here. I think we're getting out of the position for rehearing, but the panel got it wrong because, first off, it applied what appeared to be a pure Fourth Amendment analysis of a reasonably objective test under the Fourth Amendment associated standard, and solely used that framework. And it, although it recognized the facts here and it recognized the cases, it found in favor of the defendant, the found qualified immunity, by essentially taking the facts from Officer Mark Graf's point of view and not giving sufficient deference to the jury's actual findings after it had heard all of the evidence that was produced at this trial. And the second way that the panel erred is to define the clearly established law much too narrowly. It analyzed the clearly established law as if it was a Fourth Amendment question, and it didn't look to the law that governs this case when the district court gave the instructions to the jury and the law that governs this case as we are doing here today, and that is this substantive due process, purpose to harm, without a legitimate law enforcement purpose. Counsel, let me ask you a hypothetical. Suppose there were an appeal after the denial of summary judgment in this case. What would the question be before us at that time? And could it have come out the other way? In other words, no jury. I think the case would have come out, should have come out the same way But the question at that point would have been, is there sufficient conflicting evidence between what Officer Mothraff said and what the other officers who were on the scene said in their depositions most likely? Yeah, but don't we have the two-pronged test, the clearly established? How would we decide the clearly established? It would have been the same clearly established question. Was the law clearly established that an officer cannot shoot for a purpose to harm without a legitimate law enforcement purpose? So then we are taking the allegation in the complaint supplemented by whatever is in the motion for summary judgment. Right. At that point, the court would have been considering the allegations plus what are the children alleging, and then what's the crucible of gaps? And then the court would have decided whether there was sufficient evidence to send to the jury on this critical intent issue of a purpose to harm and or whether there was a legitimate law enforcement purpose. But we would be deciding the question as a matter of law that to fire 12 rounds into the driver of a car that was stuck between two other cars, perhaps moving slightly, would be enough to shock the conscience so far as the 14th Amendment claim is concerned. That would have been one of the factors. There were several other factors that would have supported and did support an adverse decision on summary judgment. Primarily, Sergeant Clare, who was standing right next to the officer who was doing the shooting, did not authorize the shooting, did not see the car coming backward, contradicted Officer Markle. I'm still on my hypothetical. All of that would come into the analysis, and we would assume for the purposes of that analysis that all of those assertions were true. That's right. And you would have had at that point five or six officers saying one thing. Were those facts presented in opposition to the motion for summary judgment? I believe they were. That the sergeant said don't shoot and all those other facts. Well, I can't. The summary judgment materials were cited in the penalty opening brief and, in fact, were quoted extensively, and we may have fussed about that. But as I understand it, those facts were presented because it was the defendant's position when they filed their opening brief in this court that the trial was pretty much the same as what was shown in summary judgment. And apparently the district court decided there were material issues of fact in dispute and denied the motion for summary judgment. That's correct. The district court did. All right. Let me ask you a different question. Why did the district court refuse the defendant's request to include a description of the heightened culpability standard in the 14th Amendment claim? She didn't believe it was necessary. She thought that I read the record. She thought it was redundant, unnecessary, and that the instruction has given coverage. She certainly hadn't. That's the type of decision that's within a district court's discretion. There's certainly no error in the law. I mean, it didn't seem to me that the description of the heightened culpability standard would have been any problem to have given to the jury, would it? Well, I mean, I think one of the merits of this case, the way it was tried, it was a very streamlined case. And I think that the judge wanted to make sure the instructions were simple, uncomplicated, and as she said, up or down. So what you're really arguing, it wasn't the theory of the case, and therefore she didn't need the instruction? Right. And she certainly had discretion to, as long as what she, as long as she correctly instructed the jury as a matter of law, and she did, and the defendant is not objecting, is not claiming that she didn't, then any additional layers were within her discretion. Well, the reason I ask that question, because I'm going back to where I went with counsel, it seems to me once the jury has come in and they've said, there's two things you've got after that to appeal. One is the sufficiency of the evidence, which they don't seem to attack. But the second is the jury instructions themselves. So that's why I ask the question. Well, I think the first time around on the first, this Court's first decision, I think you rejected the, improperly so, you rejected the, any error with regard to the jury instruction. The defendant has not filed any cross, cross petition for rehearing. Has not really raised that issue seriously. Can I address the attorneys, please? Certainly. To be frank with the Court, I spent about 15 minutes preparing the attorneys, please. But I would like to. If you had your office in Mendocino or in San Bernardino, you wouldn't be getting $600 an hour. San Bernardino, maybe, because that's part of the central district. Oh, I see. But Mendocino, no. Okay. The attorneys' question is, as we said the first time around when we argued this, is a very simple issue of, did the district court abuse her discretion? She did it exactly right. She took evidence. We submitted evidence as to the hourly rates. We submitted evidence as to why it took as long as it did. And I think this Court's familiarity with this case at this point probably illustrates how this wasn't an easy case. It took a lot of time. She applied the low-star method, and she came up, she did the arithmetic, and she came up with the numbers. Well, but $30,000 in relation to what was offered or in relation to what was asked for is nothing. Shouldn't the attorneys' fees be reduced because you didn't even get any close to what you wanted or what you were offered? In other words, the attorneys' fees turned out to be ten times the amount of the award. And that kind of gets our attention when we see that. Well, I understand that. But I think the Court probably knows why the award was so low. It was because the decedent didn't have a great relationship with the kids. But I think the Court should also recognize that to do a civil rights case such as this one, which, as this Court knows as well as I do, are better than I do, are extremely difficult to win, and there are only one with good facts and two with good lawyers who work extremely hard presenting the case. And those lawyers shouldn't be penalized, unlike any other lawyers, for doing a good job for their clients. Thank you, Counsel. Your time has expired. Mr. Devine, you have some reserve time. Thank you, Your Honor. First, I'd like to just quickly mention that Ortiz v. Jordan United States Supreme Court states that qualified immunity is preserved by renewing a Rule 50 motion. That was out of the last term. There were many theories in this case that were proffered by Pelley's during the trial, that Officer Margrave shot out of anger, spite, unreasonable fear, tombstone courage. But they didn't go into the – in fact, the instructions don't talk about anything intentional. And these – there are no 14th Amendment instructions either for pretrial detainees or for excessive force cases within the Ninth Circuit. But just a minute. But just a minute, Counsel. I'm having a little tough time with that. Well, let's look at the instructions. It seems to me the instructions are pretty straightforward. They say the standard, you've got to shock the conscience. You shock the conscience if you act with a purpose to cause the death unrelated to a legitimate law enforcement purpose. Now, that could be anything that they could come up with. It's got to be a law enforcement purpose. And the law enforcement purpose are four, taking her into custody, self-defense, or defense of others. And the jury said it's none of those. And so, therefore, its purpose is not legitimate law enforcement. What the jury verdict doesn't account for is whether Officer Margrave could have had improper motivation and at the same time be acting with a purpose that where he was. But just a minute. If they gave those instructions, how can we come out any different than that? This is the way you do it. You can't shock the conscience. You do shock it if you do it for an illegitimate law enforcement purpose. And they did. They said it was illegitimate. That's what the jury said. But they made no room. There was no even instruction to the fact of whether or not he would have been mistaken. It was to the law as to whether or not he could have shot him. Well, but you're not really arguing that the jury ought to determine whether the law at the time was a certain point and, therefore, he violated the law, are you? That's a judge's job. Absolutely. And so, therefore, what we have to do is take what the jury said and now, based on the law that's applicable at the time, apply that law to those facts. So we're saying you've got to have a legitimate purpose or you violated the law. That's the law at the time. And the jury said it's an illegitimate purpose. And, therefore, case over. That's what the district court said. And that's what I'm worried that you're trying to get us to undo. Well, no. What I'm trying to get you to undo and go back to the initial decision is to not collapse the qualified immunity test. Your Honor just raised the question about the 11th — excuse me, about the 12 shots that were fired in this case. In the Wilkinson v. Torres case, there were 11 shots fired. We raised actually a side-by-side comparison between Wilkinson v. Torres and the facts in this case. And that was in our appellants. And what did they — in Wilkinson v. Torres, did the jury actually deliberate? No. It was done at the — It was at the summary judgment stage, wasn't it? So there was no jury verdict, correct? Correct, Your Honor. Okay. Counsel, thank you very much. The time has expired. The case just argued will be submitted for decision, and the Court will adjourn. All rise. Excuse me. All certainties that we have business with the Honorable United States Court of Appeals of the Ninth Circuit will now depart. For this Court, for this session, stand adjourned. Thank you for your argument, both of you.
judges: Alarcon, O'scannlain, Smith